## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 10-cr-67 (GMS) |
| MARQUIS A. LOPEZ, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Shawn A. Weede, Esquire & Mark M. Lee, Esquire, UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF DELAWARE, Wilmington, Delaware. Attorneys for the Prosecution.

John S. Malik, LEAD ATTORNEY, John S. Malik, Esquire, Wilmington, Delaware. Attorney for the Defendant.

## **OPINION**

September 10, 2012
Wilmington, Delaware



SLEET, Chief, U.S. District Judge

## I.  INTRODUCTION

On July 6, 2010, the Grand Jury for the District of Delaware indicted defendant Marquis A. Lopez ("Lopez") for: (1) possession with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (2) knowing possession a Glock 22C semiautomatic handgun in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and (3) knowing possession of that handgun after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (D.I. 14.) Presently before the court is Lopez's Second Motion to Suppress Evidence. (D.I. 90.)  The court held an evidentiary hearing in connection with Lopez's First Motion to Suppress Evidence (D.I. 28) on December 16, 2010 (*see* D.I. 37), after which the parties filed proposed Findings of Fact and Conclusions of Law (D.I. 39; D.I. 48).[1]  Subsequent to that hearing and the parties' filings, the court issued an order scheduling a supplemental evidentiary hearing so that the parties could further develop the record with respect to the Wilmington Police Department's ("the WPD") use of Global Positioning System ("GPS") devices to track the movements of vehicles Lopez used in the months leading to his arrest.  The court convened this supplemental evidentiary hearing on March 23, 2011 (*see* D.I. 58), and the parties subsequently

---

[1] Lopez's First Motion to Suppress Evidence (D.I. 28) asked that the court exclude all evidence derived from his arrest—specifically, 19,500 bags of heroin and a firearm discovered in a secret compartment of the car he was driving—because the Wilmington Police Department ("the WPD") installed Global Positing System ("GPS") devices on certain vehicles he used without first obtaining a search warrant. (*Id.*) Lopez asserted that because the WPD's use of the GPS devices was unlawful under the Fourth Amendment, the evidence found during his arrest was likewise tainted by that unlawful activity and, therefore, inadmissible. For the reasons referenced briefly below and detailed fully in its first Memorandum and Order (D.I. 66), the court concluded that Lopez's arrest was sufficiently attenuated from any such alleged illegality to remove this "taint" and that the arresting officer did, in fact, have independent probable cause to arrest Lopez. Consequently, the court denied Lopez's First Motion to Suppress Evidence without addressing the legality of the WPD's use of GPS devices.

filed proposed Findings of Fact and Conclusions of Law addressing the record from both hearings. (D.I. 64; D.I. 65.) The court issued its Memorandum and Opinion denying Lopez's First Motion to Suppress Evidence on July 6, 2011. (D.I. 66.)

On January 20, 2011, the government filed a *motion in limine* seeking to admit, under Federal Rule of Criminal Procedure 404(b), the electronic surveillance evidence the WPD obtained from the GPS tracking devices.[2] (D.I. 82.) On January 23, 2012, the Supreme Court issued its opinion in *United States v. Jones*, wherein it concluded that the use of a GPS device by law enforcement officers to monitor the movements of a vehicle constitutes a "search" under the Fourth Amendment. *United States v. Jones*, 132 S. Ct. 945 (2012). In light of this holding and in response to the government's motion, Lopez filed his second, instant motion requesting that the court suppress all evidence gathered via the WPD's GPS surveillance because their GPS devices were employed without a warrant and were, therefore, unlawful. (D.I. 90.) The parties submitted briefing addressing the *Jones* holding and its impact on the GPS electronic surveillance evidence in this action. (D.I. 90; D.I. 91; D.I. 92; D.I. 96; D.I. 98.) After having considered the testimony elicited during the evidentiary hearings, the arguments presented in the parties' submissions, and the relevant law, the court will deny Lopez's Second Motion to Suppress Evidence. (D.I. 90.)

## II. FINDINGS OF FACT

At the evidentiary hearing on December 16, 2010, the United States called three witnesses: Corporal David Diana of the Delaware State Police ("Diana"), Officer David Hamrick, a canine officer with the WPD ("Hamrick"), and Detective Robert Fox of the WPD

---

[2] As explained below, the government seeks to admit this evidence under Rule 404(b) to show: (1) Lopez's knowledge of the heroin and firearm referenced in the indictment that were found in a secret compartment of the vehicle he was driving when arrested; and (2) Lopez's intent and *modus operandi* with respect to the charged offenses. (D.I. 82.)

3

("Fox"). Detective Fox was the only witness the United States called at the supplemental evidentiary hearing on March 23, 2011. Lopez did not call witnesses at either hearing. After listening to the witnesses' testimony at each hearing, the court concluded, as stated in its Memorandum and Order on Lopez's First Motion to Suppress Evidence, that Diana, Hamrick, and Fox's account of the facts, as recited at the December 16, 2010 evidentiary hearing, is credible. (D.I. 66 at 2.) The court also found Fox's account of the facts, as recited at the March 23, 2011 supplemental evidentiary hearing, credible. The following represents the court's essential findings of fact as required by Rule 12(d) of the Federal Rules of Criminal Procedure.[3]

In November 2009, Detective Fox and his colleagues in the WPD Drug, Organized Crime, and Vice Division received information from a past proven reliable confidential informant about an individual known as "Lope" or "Curly" who was selling heroin within the City of Wilmington. (*See* D.I. 37 at 42.) After the informant identified a photograph of Lopez as the person he knew as "Lope" or "Curly," the WPD detectives conducted a controlled purchase of heroin from Lopez in the first or second week of November 2009. (*Id.* at 43.) During the following months, the WPD investigated Lopez through a number of means. Detective Fox and his colleagues attempted another controlled heroin buy from Lopez, but the transaction was not completed because Lopez noticed police surveillance in the area. (*Id.*) In addition, Detective Fox's team conducted physical surveillance of Lopez during this period and continued to receive information regarding Lopez's movements and drug dealing activities from past proven informants and cooperating sources. (*Id.*)

---

[3] The court notes that its recitation of facts in this section is taken largely from the findings of fact it detailed in its Memorandum and Order denying Lopez's First Motion to Suppress Evidence. (D.I. 66 at 2-6.) The court includes a brief recitation of these facts here, along with additional facts relevant to the arguments the parties present in connection with Lopez's Second Motion to Suppress Evidence. The court likewise excludes facts not relevant to the disposition of Lopez's instant motion.

Detective Fox and his WPD colleagues also used GPS tracking devices to monitor the movements of the vehicles they observed Lopez driving. (*Id.*) During the course of their surveillance, two GPS devices were placed on five different vehicles at various times: a Ford Crown Victoria, a Volkswagen Jetta, a Honda Odyssey, a BMW 5 series, and a blue Dodge Durango. (D.I. 37 at 46.) While the Ford Crown Victoria was registered to Lopez, the other vehicles were registered to different Hispanic males with addresses in Philadelphia, Pennsylvania. (*Id.*) At the time of the surveillance, the two WPD GPS devices used were three-inch by three-inch battery powered units designed to magnetically attach to the undercarriage of a tracked vehicle. (D.I. 58 at 18.) Here, the devices were installed on the vehicles while they were parked in a public parking lot outside Lopez's residence on the 700 block of Townsend Street in Wilmington. (*Id.* at 27.) Once installed, the devices allowed the detectives to monitor the location of the tracked vehicle by logging on to the tracking device vendor website, Covert Track. (*Id.* at 19-21.)

Generally speaking, the information a GPS device can collect and log pertains to the tracked vehicle's location, speed, and direction of travel. (D.I. 37 at 49, 51.) Moreover, a GPS device and Covert Track, when used in conjunction, allows law enforcement officers to set up a "geofence" in monitoring a vehicle's travels. (D.I. 58 at 21-22.) As Detective Fox explained, a "geofence" is a specific geographic area that can be defined by detectives in the GPS computer program and causes the GPS device to send an email or text message to detectives when it has entered the selected area. (*Id.*) Here, the WPD detectives set up a geofence to ensure that such alerts were sent whenever the monitored vehicles entered the Interstate 95 corridor between Delaware and Pennsylvania. (*Id.* at 30.) Through utilization of the GPS devices installed on the automobiles Lopez used, the WPD detectives were able to determine that these vehicles would

5

travel to areas known for high drug trafficking in Wilmington and Philadelphia. (*Id.* at 30-32, 42.) Specifically, the electronic surveillance showed that these vehicles would travel to the Kensington section of Philadelphia—an area known for heroin transactions—and that the driver of these vehicles would travel to Philadelphia in one car, leave that car in Philadelphia, and return to Delaware in a different vehicle. (*Id.* at 32-53; *see also* D.I. 37 at 45-46.) Detective Fox testified that the WPD detectives used the GPS monitoring on the vehicles Lopez drove in order to "catch" him traveling back to Delaware after a "load run," wherein they believed he would purchase a large quantity of heroin in Philadelphia. (D.I. 58 at 54.)

Throughout their surveillance, which, in total, was conducted from February 2010 until June 2, 2010, neither Detective Fox nor his WPD colleagues obtained a court order or warrant authorizing installation or use of the GPS devices. (*Id.* at 28, 72.) Detective Fox testified at the supplemental evidentiary hearing that he did not believe, based on his own past experience and consultation with senior police officers and others, that a search warrant must be obtained before utilizing a GPS device. In particular, Detective Fox testified that, in mid-February 2010, shortly after the first GPS device was installed, he spoke with a number of senior police officers and consulted the State Attorney General's Office regarding the legality of warrantless GPS tracking. The State Attorney General's Office advised Detective Fox that a search warrant was unnecessary for installation and monitoring so long as the vehicle remained on a public road and no access to the interior of the vehicle was needed for installation. (*Id.* at 28-29.)

As noted, Lopez was arrested on June 2, 2010. (D.I. 66 at 3.) On June 1, 2010, the WPD detectives installed a GPS device on the blue Dodge Durango and, on the evening of June 2, 2010, Detective Fox received a text message from the GPS tracker indicating that the Durango entered Pennsylvania heading northbound on Interstate 95. (*Id.* (citing D.I. 37 at 47-48).)

6

Detective Fox assembled a team of WPD detectives and a drug canine officer to conduct a traffic stop of Lopez as he was returning to Wilmington. Lopez was ultimately stopped by Corporal Diana, an officer unaffiliated with the WPD or its investigation and who was engaged in "proactive patrol" on Interstate 95. For the reasons stated in its Memorandum and Order denying Lopez's First Motion to Suppress Evidence, the court concluded that the evidence found in the Durango's secret compartment and incident to Lopez's arrest—specifically, 19,500 bags of heroin and a firearm—should not be suppressed as the fruit of unlawful GPS monitoring because: (1) Corporal Diana had "probable cause independent of the GPS tracking to search Lopez and the Durango he was driving"; and (2) that search and the subsequent search of Lopez's apartment were "sufficiently attenuated from the use of GPS tracking that the evidence obtained during those searches [was] not tainted by the use of GPS tracking."[4] (*Id.* at 10-11.)

Following the Supreme Court's January 23, 2012 decision in *United States v. Jones*,[5] however, Lopez filed the instant motion asserting that the court should suppress all evidence derived from the WPD's use of GPS devices because those trackers were installed without a search warrant and, therefore, constitute an unlawful search necessitating exclusion of the evidence. Specifically, Lopez maintains that, under *Jones*, the government should be precluded from introducing electronic surveillance evidence tracking the vehicles he used in the months prior to his arrest to show, under Federal Rule of Criminal Procedure 404(b): knowledge of the heroin and firearm referenced in the indictment that were found in the Durango's secret

---

[4] As noted in the court's first Memorandum and Order, it did not need to reach the question of whether the warrantless GPS monitoring itself was unlawful because the matter was decided on attenuation grounds. (D.I. 66 at 8-11.)

[5] As noted above and discussed in greater detail below, the Supreme Court held in *Jones* that law enforcement's use of a GPS device to monitor the movements of a vehicle constitutes a search under the Fourth Amendment even if that installation and monitoring occurs in public. *See Jones*, 132 S. Ct. 945 (2012).

compartment; and/or intent and *modus operandi* with the respect to the charged offenses.[6] (D.I. 91 at 2 (citing D.I. 82).)

## III. CONCLUSIONS OF LAW

Lopez asserts that the electronic surveillance evidence obtained from the WPD's GPS devices must be suppressed as the product of an unreasonable search and seizure in violation of the Fourth Amendment. (D.I. 91 at 2.) Specifically, Lopez contends that, contrary to the government's assertion, this surveillance evidence cannot be introduced under Federal Rule of Criminal Procedure 404(b) to show knowledge, intent, or *modus operandi* in light of *Jones*. (*Id.*) In support, Lopez maintains that: (1) post-*Jones*, the evidence in question is inadmissible because the WPD detectives needed a search warrant to lawfully use the GPS devices, a warrant was not obtained, and no relevant exception to the Fourth Amendment warrant requirement applies[7] (*Id.* at 12-13); (2) the WPD's GPS monitoring of the vehicles he used[8] is appropriately characterized as "long-term" monitoring despite the government's assertion that the monitoring of each lasted for a short, discrete period, thus making it necessary under *Jones* to obtain a warrant before employing the devices (D.I. 96 at 1-2); and (3) under *Jones*, reasonable suspicion alone is insufficient to overcome the warrant requirement (*id.* at 2). Lopez further maintains that, even if the court were to find that the WPD detectives acted in good faith in installing the GPS devices without a warrant, "the good faith exception should not apply to the use of GPS

---

[6] As noted, the government filed a *motion in limine* to admit evidence of other acts pursuant to Federal Rule of Evidence 404(b). (D.I. 82.)

[7] Specifically, Lopez notes that the GPS electronic surveillance in this case lasted, in total, approximately four months and asserts that the WPD detectives cannot effectively argue on these facts that "there was insufficient time to apply for a search warrant or that exigent circumstances dispensed with the necessity of [] obtaining a search warrant." (D.I. 91 at 16.)

[8] As noted in the findings of fact section *supra*, it is undisputed that Lopez was registered to only one of the five vehicles monitored via GPS during the relevant time period. The court notes, for purposes of clarification, that its use of the phase "Lopez's vehicles" refers to the five vehicles that Lopez used and that were tracked by GPS monitoring, rather than simply to the one vehicle registered in his name.

8

monitoring by [] police officers in the subject criminal action."[9] (*Id.*) Thus, Lopez argues that the electronic surveillance evidence is not admissible under *Jones* or the good faith exception.

Conversely, the government maintains that the GPS electronic surveillance evidence should be admitted under Rule 404(b) because: (1) while *Jones* did establish that GPS monitoring constitutes a search, it "did not reach the issue of whether probable cause or a warrant" is required prior to installation and, therefore, does not stand for the rule that warrantless GPS monitoring is a *per se* Fourth Amendment violation; (2) absent Supreme Court instruction that probable cause or a warrant is required to use a GPS device, the court can conclude that reasonable suspicion—which the government maintains was present here—is sufficient to meet Fourth Amendment requirements; (3) to the extent that Lopez has standing to challenge the warrantless installation of the GPS devices,[10] the GPS monitoring periods he may challenge were "short and discrete" and cannot be characterized as similar to the "long-term" GPS monitoring addressed by *Jones*; and (4) even if the court finds that the WPD's warrantless use of GPS devices was unreasonable and/or unlawful in light of *Jones*, Lopez's motion should be denied because the WPD detectives acted in good faith, as no case law available at the time of the installation contradicted the legality of their actions. (D.I. 92 at 1-2.)

### A. Lopez's Standing to Challenge the Constitutionality of the WPD's Warrantless Use of GPS Devices

Initially, the government contends that Lopez does not have standing to challenge the constitutionality of the WPD's warrantless GPS monitoring of vehicles he used from February 2010 to June 2010. Specifically, the government maintains that: (1) because Lopez was registered only to the Ford Crown Victoria and not to the other four monitored vehicles, he is

---

[9] Specifically, and as explained in the Section III.B *infra*, Lopez challenges that Detective Fox and the other WPD detectives failed to act in good faith because they did not seek legal advice as to the constitutionality of warrantless GPS installation and monitoring until after the first GPS device was installed. (D.I. 96 at 9-10.)

[10] *See infra* Section III.A.

9

limited to challenging only the GPS monitoring of the Crown Victoria;[11] and (2) even if Lopez has standing to assert a Fourth Amendment violation despite not being registered to the other vehicles, his standing is limited only to periods when the vehicles were in his possession—specifically, when the WPD detectives actually saw him driving the vehicles or when the vehicles were parked outside his residence. (*Id.* at 11-13.) For the reasons that follow, the court disagrees with the government's assertion that Lopez's Fourth Amendment challenge as to the four vehicles not registered in his name fails for lack of standing.

It is well-established that a defendant must demonstrate standing to invoke the Fourth Amendment's exclusionary rule. *United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010). To make this requisite showing, a defendant must present evidence that his or her Fourth Amendment rights—rather than rights of or as a third party—were violated. *Id.* Generally, standing is rooted in the "*Katz* test," which requires courts to assess whether a defendant's Fourth Amendment rights were allegedly violated and, more specifically, whether that defendant had an objectively reasonable expectation of privacy in the place searched. *See, e.g., United States v. Correa*, 653 F.3d 187, 190 (3d Cir. 2011); *see also Oliver v. United States*, 466 U.S. 170, 177 (1984) ("Since [*Katz*], the touchstone of Amendment analysis has been the question of whether a person has a 'constitutionally protected reasonable expectation of privacy.'" (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967))).

Importantly, however, the *Jones*' majority, while not repudiating the *Katz* test, grounded its finding that the installation of a GPS device on a vehicle is a "search" in the common law of

---

[11] In its Sur-Reply, the government states that it will not seek to introduce electronic surveillance evidence of the Ford Crown Victoria's movements during the GPS monitoring period in question. (D.I. 98 at 4 n.1.) The government also notes that, because there is no evidence in the record indicating that information gained from the Crown Victoria tracking had any bearing on subsequent decisions to use tracking devices elsewhere in the investigation, the surveillance of this vehicle did not impact the WPD's monitoring of the other four vehicles. (*Id.*) The court agrees and Lopez does not dispute that there is no evidence in the record demonstrating a connection between the Ford Crown Victoria tracking and the WPD's monitoring decisions with respect to the other four vehicles.

10

trespass. *Jones*, 132 S. Ct. at 949-52. Specifically, the Court concluded that because the Fourth Amendment protects against physical invasions of private property—even if that property is exposed to the public—a defendant can have standing to raise a "property-based" claim if that defendant has a protected property interest in a vehicle, such as ownership or possession, and the government "physically occupied" that private property "for the purpose of obtaining information."[12] *Id.* at 949. To this end, the defendant must have either owned or possessed the vehicle when the GPS device was installed or must have been using the vehicle when the GPS device was monitoring it. *United States v. Hanna*, No. 11-20678-CR, 2012 WL 279435, at *3 (S.D. Fla. Jan. 30, 2012); *see also Jones*, 132 S. Ct. at 949 n.2.

In view of the foregoing and in consideration of the instant facts, the court disagrees with the government's assertion that Lopez has not established a property interest in the vehicles at issue because: (1) all vehicles except the Ford Crown Victoria were registered to third parties; (2) Lopez "was only observed driving the vehicles for brief periods of time in the Wilmington area"; and (3) it is unclear from the record whether Lopez "had lawful authorization" to drive the vehicles. (D.I. 92 at 12.) Rather, as the *Jones'* majority makes clear, an individual not registered to a vehicle can still have standing to challenge an alleged Fourth Amendment violation where that individual is the "exclusive driver" and, as a result, assumes the property rights of a bailee. *Jones*, 132 S. Ct. at 949 n.2. Alternatively, a non-owner can also assume possessory trespass rights when they are using or occupying the vehicle "at the time the government trespassorily insert[s] the information-gathering device." *Id.* at 953.

Here, the record makes clear that each time the WPD detectives installed a GPS device on one of the Lopez vehicles, the installation took place in a small public parking lot outside his

---

[12] In *Jones*, the Court found that the defendant had a property-based claim with respect to the vehicle search because the vehicle was registered to his wife and he was the exclusive driver, giving him "at least the property rights of a bailee" during the twenty-eight day monitoring period. *See Jones*, 132 S. Ct. at 949 n.2.

residence on Townsend Street. (D.I. 96 at 5 (citing D.I. 58 at 27, 28, 38-39, 41, 46, 50, 53, 56, 59).) The record also indicates that there were instances in which WPD detectives witnessed Lopez driving the tracked vehicles, including the Crown Victoria, the Honda Odyssey, and the Dodge Durango, while they were simultaneously being monitored by a GPS device. (*Id.* at 5-6 (citing D.I. 58 at 39-41, 54; D.I. 66 at 4).) Moreover, while the government cites the Third Circuit's holding in *United States v. Kennedy* to support its argument that Lopez does not have standing because there is no evidence that he was lawfully authorized to use the vehicles,[13] it does not point to any evidence in the record establishing Lopez as an "unauthorized" user. (D.I. 92; D.I. 98.) To the contrary, the court finds credible Detective Fox's statement that, based on his training and experience, it is "common" for a subject engaged in drug trafficking to drive vehicles registered to other individuals and to use multiple cars to evade law enforcement detection. (D.I. 37 at 44-46; D.I. 58 at 27, 37.) Detective Fox also testified that the third parties to whom the vehicles were registered had no known relationship with Lopez, such that it does not appear that the registered individuals used or shared use of the vehicles with him during the time in question. (D.I. 58 at 26-27, 37-38.)

Instead, the parties do not dispute that the GPS devices were installed outside Lopez's house and that he was seen driving the vehicles on at least three occasions when those vehicles were being monitored by the devices. As noted, *Jones* establishes that a non-owner who lawfully possesses a vehicle registered to a third-party has at least the property rights of a bailee. In this case, there is no evidence to contradict that Lopez was, at least at some points in time, in possession of the vehicles registered to third parties. In fact, the evidence suggests that Lopez

---

[13] In *Kennedy*, the Third Circuit established that a defendant has no reasonable expectation of privacy in a rental car where that defendant was an "unauthorized driver" and, therefore, had "no cognizable property interest in the . . . vehicle" and, as a result, "no accompanying right to exclude." *See United States v. Kennedy*, 638 F.3d 159, 165 (3d Cir. 2011).

12

was the primary user of the vehicles.[14] Thus, because the court finds that Lopez had possession of the vehicles at the times the GPS devices were installed and was seen driving the vehicles during GPS monitoring, the court concludes that Lopez had possession of the vehicles sufficient to satisfy the trespass standing requirements the majority outlined in *Jones*.

The court further notes that it reaches the same conclusion applying the *Katz*'s reasonable expectation of privacy test supported by the *Jones'* concurrence. The *Katz* test, in the main, focuses on whether the monitoring of a defendant via GPS would "impinge[]" on his or her reasonable "expectation[] of privacy." *Jones*, 132 S. Ct. at 958. In *Jones*, law enforcement monitored the defendant for a period of four weeks. On these facts, Justice Alito, writing for the concurrence,[15] concluded that the defendant would have "an expectation of privacy that he would not be monitored for four weeks." *Id.* (Alito, J., concurring). Justice Alito also noted that where "uncertainty exists" as to whether "a certain period of GPS surveillance is long enough to constitute a . . . search, the police may always seek a warrant." *Id.* at 964. Here, the WPD monitored Lopez for seventeen days over a period of four months.[16] The court concludes, for the reasons stated more fully in the section to follow, that the number of days the WPD detectives monitored Lopez's movements and the total time the WPD conducted electronic surveillance is

---

[14] The evidence does not establish that Lopez was an "unauthorized" user of the vehicles and the parties do not fully develop this argument in their briefing. (D.I. 91; D.I. 92; D.I. 96; D.I. 98.) Indeed, Lopez requests that the parties submit addition briefing on this issue if standing does in fact turn on whether he was an "authorized" user of the vehicles and, therefore, capable of "possession" as a "bailee" within the meaning of *Jones*. (D.I. 96 at 6.) Because the court concludes that the evidence at issue is admissible under the good faith exception to the Fourth Amendment exclusionary rule, it finds that this additional briefing is unnecessary as such filings would not affect the court's ultimate conclusion in this matter.

[15] Justice Alito was joined in his concurrence by Justices Breyer, Ginsburg, and Kagan. *See Jones*, 132 S. Ct. at 957-58.

[16] The government states that Lopez was only in possession of the vehicles in Wilmington for "short, discrete periods of time." (D.I. 98 at 4.) Specifically, the government details that this monitoring was inclusive of: February 23 (GPS installed on the Volkswagen Passat); April 30 through May 3 (GPS installed on the Dodge Durango); May 14 through May 15 (GPS installed on the BMW); May 22 through May 26 (GPS installed on the Honda Odyssey); May 28 to May 29 (GPS installed on the Volkswagen Passat); and June 1 through June 3 (GPS installed on the Dodge Durango). (*Id.*) Conversely, Lopez maintains that the court should consider the entire period of time during which the WPD employed GPS tracking in connection with their investigation—four months of surveillance—as opposed to the discrete time periods the government lists. The court notes that it considers both time frames the parties advance in evaluating the reasonableness of the WPD's warrantless GPS use.

not so distinguishable from the timeframe detailed in *Jones* as to render Lopez's monitoring decidedly "short-term." Consequently, the court concludes that Lopez would have a reasonable expectation of privacy that he would not be monitored over a seventeen day or four-month period while driving the tracked vehicles.

In view of the foregoing, the court concludes that Lopez has standing to assert a Fourth Amendment violation because: (1) he had a possessory interest in the vehicles when the GPS devices were installed outside his apartment and, at least, at various times when the vehicles were being monitored, thus satisfying *Jones*' trespass standing requirement; and (2) he would have a reasonable expectation that the vehicles he was using would not be tracked by electronic surveillance during the time period at issue here, thus meeting the *Katz* test embraced by the *Jones* concurrence.[17]

### B. The Validity of the WPD Detectives' Warrantless Use of GPS Devices

The Fourth Amendment protects the right of individuals to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As the court recognized in its Memorandum and Opinion denying Lopez's First Motion to Suppress Evidence, the "issue of whether the placement and use of [GPS] tracking devices constitutes a search under the Fourth Amendment has become increasingly prominent in both federal and state court in recent years." (D.I. 66 at 7.) The Supreme Court recently addressed this question in *Jones*, wherein it concluded that "installation of a GPS device on a target's vehicle, and [] use of that device to monitor the vehicle's movements on public streets" is a

---

[17] The court notes that it does not address the government's argument that, if the court were to find, as it has, that Lopez has standing under *Jones*, he can only challenge the vehicle surveillance that occurred when the tracked vehicles were outside his apartment or when he was seen driving the vehicle as it was monitored. (*Id.* at 4-5.) Specifically, because the court finds that the WPD detectives acted in good faith in installing the GPS devices and, therefore, that Lopez's motion to suppress is denied, it does not need to distinguish whether, had the officers not acted in good faith, Lopez could have challenged the admissibility of electronic surveillance conducted when he was not driving or in physical possession of the vehicle. (*Id.* (citing *United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010).) Thus, the court does not consider this issue.

"search" under the Fourth Amendment. *See Jones*, 132 S. Ct. at 948-49. The Court, in reaching this conclusion, applied the common law of trespass to find that, in such a scenario, the government "physically occupie[s] private property for the purpose of obtaining information." *Id.* at 949. This, the court concluded, is a "physical intrusion" that undoubtedly "would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted."[18] *Id.* (citing *Entick v. Carrington*, 95 Eng. Rep. 807 (C.P. 1765)).

Importantly, and as the government correctly notes, however, the *Jones* Court did not reach the question of whether a warrant was required before installing a GPS device and/or whether probable cause or reasonable suspicion alone is sufficient to satisfy the dictates of the Fourth Amendment.[19] While the government argues that the court does not need such guidance here because, pursuant to relevant Supreme Court precedent, the presence of reasonable suspicion and the "short-term" nature of the monitoring adhere to Fourth Amendment requirements, the court need not ultimately address this issue. Even if the court were to assume that the placement and use of the GPS devices in this case constituted an illegal search because they were installed without a warrant,[20] the court concludes that the WPD detectives acted in good faith under relevant law. Thus, the evidence should not be suppressed.

---

[18] Writing for the majority, Justice Scalia explained that "Fourth Amendment jurisprudence was tied to common-law trespass, at least until the latter half of the 20th century" and this jurisprudence "was understood to embody a particular concern for government trespass upon the areas ('persons, houses, papers, and effects') it enumerates." *See Jones*, 132 S. Ct. at 949-50. Justice Scalia also clarified that the Court's *Katz* jurisprudence "did not repudiate" that understanding and that the "*Katz* reasonable-expectation-of-privacy test has been added to, but not substituted for, the common-law trespassory test." *See id.* at 947 (citing *Alderman v. United States*, 394 U.S. 165, 176 (1969)).

[19] The Court in *Jones* did not reach the issue of whether the search was reasonable and, thus, lawful under the Fourth Amendment because the government "did not raise it below, and the D.C. Circuit therefore did not address it." *Id.* at 954. Consequently, the question of whether reasonable suspicion or probable cause could render a GPS search reasonable and legal was forfeited and not considered in *Jones*. *Id.*

[20] The court notes that while it does not fully examine whether the WPD had reasonable suspicion or probable cause in this case or whether either would prove sufficient under *Jones* to render a warrantless GPS search reasonable and, thus, legal, it is not persuaded by the government's argument. Specifically, and as noted above, the government urges the court to accept its contention that *Jones* does not require the presence of probable cause or a warrant because it did not reach that issue and "[n]ot every search and seizure by law enforcement requires a warrant

It is well-established that "suppression is not an automatic consequence of a Fourth Amendment violation." *Herring v. United States*, 555 U.S. 135, 137 (2009). Rather, as the Supreme Court held in *Herring v. United States*, the "exclusionary rule is not an individual right and applies only where it 'result[s] in appreciable deterrence.'" *Id.* at 141 (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)). Indeed, the purpose of the exclusionary rule is to deter deliberate, reckless, and grossly or systematically negligent police conduct, rather than to remedy such past violations. *See Davis v. United States*, 131 S. Ct. 2419, 2426-27 (2011). To this end, the Supreme Court has clarified that the exclusionary rule does not apply when "police act with

---

or even probable cause." (D.I. 92 at 13 (citing *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)).) Rather, the government argues that *Jones* requires only a "totality of the circumstances" assessment to determine "whether a warrantless search is reasonable, balancing 'the degree to which [the government action] intrudes upon an individual's privacy,' and 'the degree to which it is needed for the promotion of legitimate government interests.'" (*Id.* at 13-14 (citing *Samson v. California*, 547 U.S. 843, 848 (2006) (citation omitted)).) To this end, the government asserts, "law enforcement officers may install and monitor a GPS tracking device on a vehicle for a short period of time if they have reasonable suspicion it is being used in furtherance of a crime." (*Id.* at 14.) In support, the government notes, among several arguments, that "requiring a warrant prior to such [GPS] monitoring would seriously impede the government's ability to investigate clandestine crimes, such as drug trafficking, since GPS trackers could not be used to establish probable cause to search a location, which is often the most productive use of such devices." (*Id.*)

While the government correctly observes that Fourth Amendment jurisprudence does not require probable cause and/or a warrant in all cases, the court does not agree that *Jones* necessarily stands for the proposition the government maintains. As noted, the GPS device in *Jones* was placed on a vehicle for a period of twenty-eight days and collected 2,000 pages of data over the course of the surveillance. Here, the government argues that because the WPD detectives had reasonable suspicion and the GPS monitoring was "short-term" in nature—totaling seventeen days over a period of approximately four months—this "relatively short-term monitoring of a person's movements on public streets" accords "with expectations of privacy that our society has recognized as reasonable." (*Id.* at 17 (citing *Jones*, 132 S. Ct. at 948, 964 (Alito, J., concurring)).) The court is not persuaded that under *Jones* a warrant was not required in this case or that the WPD's monitoring is correctly characterized as "short-term." Instead, it seems clear to the court that the *Jones'* majority and concurrence agreed—under both the majority's trespass common law analysis and the concurrence's "reasonable expectation of privacy" examination—that the warrantless, long-term use of a GPS device installed on a defendant's vehicle constitutes an illegal search. *See Jones*, 132 S. Ct. at 954, 957, 964.

Given the extent of the GPS tracking in this case and the period of time over which it occurred, the court disagrees with the government's assertion that: (1) the facts of the instant case are clearly and necessarily reasonable under *Jones*; and (2) *Jones* may be read to support the proposition that a warrant would not be required where law enforcement conducts warrantless electronic surveillance for a period of at least seventeen days. Rather, it appears to the court that the length of the GPS monitoring in this case is not so distinguishable from the duration of the monitoring conducted in *Jones* that the court can authoritatively conclude the Supreme Court would consider seventeen days a short-term monitoring obviating the need for a warrant. *See Jones*, 132 S. Ct. at 964 (Alito, J., concurring) ("We need not identify with precision the point at which the tracking . . . became a search . . . . [W]here uncertainty exists with respect to whether a certain period of GPS surveillance is long enough to constitute a Fourth Amendment search, the police may always seek a warrant."). The court notes, however, that because it concludes the evidence in question should not be suppressed under the good faith exception to the exclusionary rule, it does not fully examine or reach the issue of the legality of the search in this case.

16

an objectively reasonable good faith belief that their conduct is lawful." *See id.* at 2427. The Court explained its rationale for this application in *Herring*, wherein it recognized that suppression imposes a "costly toll upon truth-seeking and law enforcement objectives" by "letting guilty and possibly dangerous defendants go free." *See Herring*, 555 U.S. at 141-42. In light of this consideration, the Supreme Court has instructed district courts tasked with assessing exclusionary rule suppression issues to exclude evidence only when "the benefits of deterrence . . . outweigh the costs." *See id.; see also Davis*, 131 S. Ct. at 2427 ("For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs.").

Thus, the question of suppression should ultimately "turn[] on the culpability of the police and the potential of exclusion to deter wrongful police conduct." *See Herring*, 555 U.S. at 137. In this assessment, "the deterrence benefits of exclusion" will inevitably "'[v]ary with the culpability of the law enforcement conduct' at issue." *See Davis*, 131 S. Ct. at 2427. Specifically, "when police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force and exclusion cannot pay its way." *Id.* at 2427-28 (internal citations omitted).

In keeping with this principle, the Supreme Court has, in certain instances, upheld the admission of evidence obtained in violation of the Fourth Amendment under the "good faith exception" to the exclusionary rule. For example, the Court has upheld admissibility despite a Fourth Amendment violation where law enforcement committed that violation relying on: a warrant;[21] a statute later declared unconstitutional;[22] a flawed police database;[23] an erroneous

---

[21] *See Leon*, 468 U.S. at 916 (noting that the purpose of the exclusionary rule is to "deter police misconduct rather than to punish the errors of judges and magistrates" and concluding that because "there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness

17

arrest warrant;[24] and prior judicial precedent.[25] In each instance the Court found application of the good faith exception appropriate because the evidence in question was obtained as a result of "nonculpable, innocent police conduct" and, therefore, the need for deterrence was significantly minimized. *See Davis*, 131 S. Ct. at 2429.

Here, the court concludes that the evidence the WPD obtained through the warrantless installation of GPS devices on vehicles Lopez used is admissible under the good faith exception because the WPD detectives: (1) acted in reasonable reliance on the absence of federal or state case law establishing that GPS monitoring of a vehicle in public is a Fourth Amendment "search"; and (2) attempted to comply with Fourth Amendment search requirements in good faith. First, and with regard to the case law available at the time the GPS devices were installed in this case, there were no Federal Courts of Appeals decisions indicating that the warrantless use of GPS tracking devices was unreasonable and unlawful. Instead, prior to the D.C. Circuit's August 6, 2010 decision in *United States v. Maynard* that warrantless GPS use is unreasonable, every circuit court that considered the question concluded that police do not need to obtain a warrant to install and monitor a GPS device on the exterior of a car, so long as that car remains on public roads. Importantly, the D.C. Circuit's *Maynard* decision was issued two months after

---

among these actors requires application of the extreme sanction of exclusion," the evidence at issue should not be excluded despite the Fourth Amendment violation).

[22] *See Illinois v. Krull*, 480 U.S. 340 (1987) (concluding that the "good-faith exception to the Fourth Amendment exclusionary rule applies when an officer's reliance on the constitutionality of a statute is objectively reasonable, but the statute is subsequently declared unconstitutional").

[23] *See Arizona v. Evans*, 514 U.S. 1 (1995) (finding that the good faith exception to the Fourth Amendment exclusionary rule applied where law enforcement relied on flawed police databases because: "the exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees" and there was no evidence that the court employees "were inclined to ignore or subvert the Fourth Amendment" such that "application of the extreme sanction of exclusion" was appropriate (citation omitted)).

[24] *See Herring*, 555 U.S. at 137-38, 147-48 (concluding that where law enforcement violated a defendant's Fourth Amendment rights due to a "bookkeeping error by another police employee" the exclusionary rule did not apply because suppression would not serve the end of deterring wrongful police conduct as the "error was the result of isolated negligence attenuated from the arrest").

[25] *See Davis*, 131 S. Ct. at 2428-2429 (finding application of the exclusionary rule inappropriate and the good faith exception applicable where the law enforcement officers relied on binding judicial precedent that seemingly sanctioned their actions and they acted in objectively reasonable reliance on this precedent).

Lopez's arrest. This meant that at the time of the WPD's monitoring neither the Third Circuit Court of Appeals nor any other federal circuit court had concluded that warrantless GPS monitoring and installation was unlawful. Indeed, even the commentary to Federal Rule of Criminal Procedure 41, which governs warrants and was adopted by the Supreme Court pursuant to 28 U.S.C. § 2072(a), maintains the same view. *See* FED. R. CRIM. PROC. 41 (Advisory Committee's note to the 2006 amendments) (stating that a warrant is only required for a tracking device "if the device installed (for example, in the trunk of the defendant's car) or monitored (for example, while the car is in the defendant's garage) in an area in which the person being monitored has a reasonable expectation of privacy").

Moreover, at the time of the WPD's investigation, numerous federal courts had approved warrantless installation and monitoring of GPS devices on vehicles that remained on public roads based at least in part on the Supreme Court's holdings in *United States v. Knotts*[26] and *United States v. Karo*.[27] *See, e.g.*, *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007); *United States v. McIver*, 186 F.3d 1119, 1127 (9th Cir. 1999); *United States v. Michael*, 645 F.2d 252, 257-59 (5th Cir. 1981) *(en banc)*; *United States v. Coombs*, 2009 WL 3823730 (D. Ariz. Nov. 12, 2009); *Morton v. Nassau City Police Dept.*, 2007 WL 4264569 (E.D.N.Y. Nov. 27, 2007); *United States v. Coulombe*, 2007 WL 4192005 (N.D.N.Y. Nov. 26, 2007); *United States v. Moran*, 349 F. Supp. 2d 425, 467 (N.D.N.Y. 2005).

In addition, during the WPD's investigation of Lopez, which ended on June 3, 2010 following his arrest, there was no State of Delaware case law opining that the installation and use of a GPS tracking device to monitor a vehicle's location while traveling on public roads required

---

[26] 460 U.S. 276, 281 (1983) (holding that "traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movement from one place to another").

[27] 468 U.S. 705, 714-15 (1984) (concluding that no search occurred where police officers monitored a beeper during the periods it was exposed to public view).

19

a warrant. In fact, the first Delaware case to consider the issue was decided six months after Lopez's arrest. *See State v. Holden,* 2010 WL 5140744 at \*3-\*8 (Del. Super. Dec. 14, 2010) (concluding that prolonged warrantless GPS tracking is unreasonable under the Delaware Constitution).

Second, the court further concludes that the undisputed evidence in the record supports a finding that Detective Fox and the other WPD detectives who installed and monitored the GPS devices acted in good faith and in reasonable reliance on contemporaneous guiding case law and legal advice. Specifically, and as noted above, Detective Fox testified that he did not believe, based on his prior experience, that a warrant was needed before installing and monitoring a GPS device if the installation and monitoring occurred while the vehicle was in public. Detective Fox further explained that, in addition to drawing this conclusion based on his own experience, he spoke with a number of senior police officers and superiors and sought legal advice from the State Attorney General's Office. Both the senior officers and the State Attorney General's Office advised Detective Fox that his investigative methods were appropriate and that he did not need to obtain a warrant so long as the vehicles remained on public roads.

Conversely, Lopez asserts, as the only argument he advances in response to the government's contention that the WPD's actions fall within the good faith exception, that Detective Fox did not act in "good faith" because he did not seek advice from senior officers and the State Attorney General's Office until shortly after he installed the first GPS device without a warrant. (D.I. 96 at 9.) Specifically, Lopez argues that "[h]ad the detective truly proceeded on a good faith basis, his inquiry regarding the legality of installing GPS tracking devices without the authorization of a search warrant would have been initiated well before he warrantlessly installed

20

the first GPS device." (*Id.* at 8-9.) In view of the evidence before it, however, the court finds Lopez's argument unpersuasive.

As noted above, the central question trial courts are to assess in determining whether the Fourth Amendment's exclusionary rule applies is whether the law enforcement officers engaged in culpable conduct necessitating application of the rule for purposes of deterrence, or whether the officers acted in good faith. While Lopez is correct that Detective Fox did not seek legal advice until shortly after the first GPS device was installed, the court finds that there is no evidence in the record indicating that he or the other WPD detectives did not act in good faith. Instead, the record shows that: (1) at the time of the WPD's investigation, every Federal Court of Appeals to consider the question of whether a warrant was needed before the installation and monitoring of a GPS device had concluded that, in light of Supreme Court precedent to date, police did not need to obtain a warrant if the GPS tracking device was installed on the exterior of the car and the vehicle remained on public roads; and (2) the only Delaware case to address the issue of warrantless tracking was not issued in an opinion until two months after Lopez was arrested and the investigation ceased.

Considering this evidence, the court rejects Lopez's assertion that Detective Fox's failure to seek legal advice prior to installing the first GPS device demonstrates that he did not act in good faith. To the contrary, the record shows—and Lopez does not challenge—that, based on the case law available at the time and his own experience, Detective Fox did not have reason to believe that the warrantless use of GPS tracking devices would be unlawful. Furthermore, the court notes that Detective Fox took active steps to confirm that his conclusion was indeed accurate by consulting with senior police officers and the State Attorney General's Office. This, coupled with the other evidence in the record, buttresses the government's argument that

21

Detective Fox acted in good faith. *See Messerschmidt v. Millender*, 132 S. Ct. 1235, 1249 (2012) (concluding that officers were entitled to qualified immunity when they had, *inter alia*, submitted a warrant application for review to a superior officer and a deputy district attorney, both of whom approved the application). Put simply, these law enforcement agents did not act in a manner requiring the prophylaxis of suppression, but instead sought to conduct themselves according to the prescriptions of the Fourth Amendment. *See Davis*, 131 S. Ct. at 2427; *see also Leon*, 468 U.S. at 916.

Thus, having considered the evidence in the record and credibility of the witnesses who testified at the suppression hearings held in connection with this matter, the court finds that suppression of the evidence in this case would be inappropriate. *Davis*, 131 S. Ct. at 2427.

## IV.  CONCLUSION

For the foregoing reasons, the court hereby denies Lopez's Second Motion to Suppress Evidence (D.I. 90) and grants the government's First *Motion in Limine* to Admit Evidence of Other Acts Pursuant to Federal Rule of Evidence 404(b) (D.I. 82).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 10-cr-67 (GMS) |
| MARQUIS A. LOPEZ, | ) |
| | ) |
| Defendant. | ) |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED THAT:

1. The defendant's Second Motion to Suppress Evidence (D.I. 90) is DENIED;

2. The government's *Motion in Limine* to Admit Evidence of Other Acts Pursuant to
   Federal Rule of Evidence 404(b) (D.I. 82) is GRANTED.

Dated: September /ᴗ, 2012

CHIEF, UNITED STATES DISTRICT JUDGE